IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MARINE LIFE SCIENCES, INC., a Nevada Corporation,<br><br>    Plaintiff,<br><br><br><br><br><br><br><br><br>        vs.<br><br><br>UNIQUE SEA FARMS, LTD., a British Columbia, Canada entity; TOM HARPER, an individual; and MARGARET HARPER, an individual,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF MARGARET HARPER'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND DENYING PLAINTIFF'S UNIQUE SEA FARMS AND TOM HARPER'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION<br><br><br><br>Case No. 2:09-CV-914 TS |

This matter is before the Court on two separate motions to dismiss for lack of personal jurisdiction, one filed by Defendant Margaret Harper, and the other filed by Defendants Unique Sea Farms, Ltd., and Tom Harper. For the reasons discussed below the Court will deny both motions. The underlying action is contractual in nature.

1

## I. Background

The following facts are taken from the Complaint and viewed in the light most favorable to the Plaintiff as the non-moving party. Plaintiff, Marine Life Science ("MLS") is a Nevada corporation with its principal place of business in Utah. Defendant Unique Sea Farms, Ltd. ("USF"), is an entity organized in British Columbia, Canada with its principal place of business also in British Columbia, Canada. Defendant Tom Harper ("Defendant TH") is a resident of British Columbia, but is the owner and founder of USF. Defendant Margaret Harper ("Defendant MH") is the wife of Defendant TH, she is also a resident of British Columbia, Canada.

Plaintiff alleges that Defendant USF is subject to personal jurisdiction in this Court because USF conducts business with two Utah companies, Plaintiff and ForeverGreen; sends product here for resale; directs weekly phone calls to an MLS plant; and communicates with Utah entities regarding collection of funds and shipments.

Plaintiff alleges Defendants Mr. and Mrs. Harper are subject to personal jurisdiction because they have repeatedly visited Utah on USF business, including to negotiate the various agreements. Additionally, the Complaint alleges that both the Harpers have represented that Defendant MH is a co-owner of USF, that Defendant MH has been substantially involved in the activities of Defendant USF and in the various acts and transactions forming the basis of this lawsuit.

## II. Standard of Review

Plaintiff has the burden of establishing personal jurisdiction over each Defendant.[1]  At the pleading stage, "when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing that jurisdiction exists."[2]  "All factual disputes are resolved in favor of the plaintiffs when determining the sufficiency of this showing."[3]  "Whether a non-resident defendant has the requisite minimum contacts with the forum state to establish in personam jurisdiction must be decided on the particular facts of each case."[4]  "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[5]  Thus, as the forum state, Utah law governs.[6]  "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the

---

[1]*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998); *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir. 1984).

[2]*Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009); *see also Soma Med. Int'l*, 196 F.3d 1292, 1295 (10th Cir. 1999); *Hafen v. Strebeck*, 338 F.Supp. 2d 1257, 1260 (D. Utah 2004).

[3]*Rusakiewicz*, 556 F.3d at 1100.

[4]*Shanks v. Westland Equipment and Parts Co.*, 668 F.2d 1165, 1166 (10th Cir. 1982).

[5]*Soma Med. Int'l*, 196 F.3d at 1295 (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).

[6]*Rusakiewicz*, 556 F.3d at 1100 (quoting *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)).

moving party."[7]

"[J]urisdiction based on physical presence alone constitutes due process because it is one of the continuing traditions of our legal system that define the due process standard of 'traditional notions of fair play and substantial justice.'"[8] Where "a person is induced by artifice or fraud to come within the jurisdiction of the court for the purpose of procuring service of process,"otherwise valid service becomes invalid.[9]

"[T]he evaluation of specific jurisdiction in Utah mandates a three-part inquiry: '(1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute: (2) a 'nexus' must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirements of federal due process.'"[10]

Utah's long-arm statute provides in pertinent part as follows:

> Any person . . . who in person or through an agent does any of the following enumerated acts, submits himself . . . to the jurisdiction of the courts of this state as to any claim arising out of that or related to:
>
> the transaction of any business within this state; contracting to supply services or goods in the state; the causing of any injury within this state whether tortious or by breach of warranty.[11]

The Utah legislature has declared that the long-arm statute must be interpreted broadly

---

[7]*Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984).

[8]*Burnham v. Superior Court of California*, 495 U.S. 604, 615 (1990).

[9]*Commercial Mut. Accident Co. v. Davis*, 213 U.S. 245, 256 (1909).

[10]*Nat'l Petroleum Mkt'g, Inc. v. Phoenix Fuel Co.*, 902 F. Supp. 1459, 1465 (D. Utah 1995).

[11]UTAH CODE ANN. § 78B-3-205 (West 2009).

"so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."[12] "The long-arm statute itself defines the transaction of business broadly, as activities of a non-resident person, his agents, or representatives in this state which affect persons or businesses within the state of Utah."[13]

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations.'"[14] Accordingly, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exists 'minimum contacts' between the defendant and the forum state."[15] The "minimum contacts" necessary for specific personal jurisdiction are established "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."[16] Purposeful availment exists where a party has "created 'continuing obligations' between himself and residents of the forum" and where "his activities are shielded by 'the benefits and protections' of the forum's laws."[17] If the defendant's activities create sufficient minimum contacts, we then

---

[12]*Id*. § 78B-3-201.

[13]*Soma Med.*, 196 F.3d at 1297-98 (internal citations omitted).

[14]*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985).

[15]*World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

[16]*OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *Burger King Corp.*, 471 U.S. at 472).

[17]*Burger King Corp.*, 471 U.S. at 476 (internal citations omitted).

consider "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'"[18]

We therefore examine the quantity and quality of Defendants' contacts with Utah, including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing,"[19] and then assess whether the cause of action arises out of those contacts to determine whether the exercise of personal jurisdiction over a defendant comports with due process.[20]

### III. Discussion

A. Defendant Margaret Harper

The Court finds that Plaintiff has sufficiently alleged facts for the Court to assert specific personal jurisdiction over Defendant MH. Because the parties submitted declarations that conflict with each other, the Court must resolve factual disputes in Plaintiff's favor.[21]

Plaintiff asserts that Defendant MH has sufficient minimum contacts with Utah to be subject to personal jurisdiction of this Court. Defendant MH counters through a declaration that she is not a shareholder, employee or agent of USF.[22] Defendant MH instead asserts that she is the president and sole shareholder of two other Canadian entities, Canadian Pacific Algae, Inc.,

---

[18]*OMI Holdings, Inc.*, 149 F.3d at 1091.

[19]*Burger King Corp.*, 471 U.S. at 479.

[20]*Soma,* 196 F.3d at 1298.

[21]*Behagen*, 744 F.2d at 733.

[22]Declaration of Margaret Harper, Docket No. 35, at 1.

("CPA"), and Canadian Pacific Phytoplankton, Ltd., ("CPP"). Defendant MH further states that neither she, nor any of the entities she is affiliated with, are parties to the agreements in question in this lawsuit. Defendant MH asserts that she has traveled to Utah three to four times, always to accompany her husband, when he spoke at conferences hosted by ForeverGreen. Defendant MH does admit that she was once interviewed by a ForeverGreen representative for a video being prepared by ForeverGreen. Her declaration, however, does not describe the nature of either the interview or the video. Finally, Defendant MH continues to state that none of the entities she is affiliated with ship products into Utah and that she does not personally own, and has never leased any real or personal property in Utah.

In response, Plaintiff asserts that both Defendant MH and Defendant TH have expressly represented to its personnel that they consider Defendant MH to be a co-owner of Defendant USF. Plaintiff also asserts that Defendant MH was part of numerous communications with it leading up to several agreements between USF, Defendant TH, and MLS. Plaintiff further asserts that it was largely due to those communications that it decided to enter into agreements with Defendant USF and Defendant TH. Although admittedly not a party to the agreements, Plaintiff contends that Defendant MH was directly and substantially involved in the negotiations and representations inducing Plaintiff to enter into the agreements. Plaintiff maintains that Defendant MH was present at most face-to-face negotiation meetings and was copied on most of the correspondence relating to those negotiations. Due to the deteriorating health of Defendant TH in 2006, it is alleged that Defendant MH took a particularly active role, as Defendant USF's lead negotiator, in the 2006 agreement. Plaintiff asserts that the video mentioned by Defendant

7

MH was in fact a marketing video to be used with MLS marketing materials, and that during that

particular visit to Utah, Defendant MH spent almost an entire day at MLS, attended a research

advisory board meeting at the University of Utah, and engaged in substantive discussions

regarding the agreements between USF and MLS.

Defendant MH asserts that Plaintiff includes information in its briefing not included at

the hearing on the issue and such additional information should therefore be stricken.  However,

the hearing in question was not a hearing on the jurisdictional issues.  Although the parties

briefly spoke about the jurisdictional issues, at the time, the briefing on the issue was not

complete and the hearing was actually set for argument on the motion for a preliminary

injunction[23]

Defendant MH misrepresents the Court's final guidance at the close of the hearing.

Contrary to Defendant MH's assertion, the Court did not so narrowly state "that either party

could supplement its 'Arguments' with evidence that was presented at the hearing."[24]  The Court

stated:

> Counsel, let me also suggest that if there is anything that occurs to either of you
> that may arise out of this hearing that you want to supplement your arguments that
> you make here . . . I want you to feel free to do that on those dates, okay.  You can
> characterize what you want, supplemental memorandum, argument based upon
> evidence presented here today, or something of that sort, and the other side will
> get a chance to reply to it so that you will all be given full opportunity to develop

---

[23]*See* Docket No. 27.  The hearing was held on December 10, 2009.  Briefing on the
jurisdiction issue was not completed until December 30, 2009.

[24]Defendant Margaret Harper's Reply, Docket No. 66 at 2.

the record and the Court will have the best evidence for it.[25]

The Court's intent was to create and develop a full record. Moreover, as the briefing period for this Motion had not expired at the time of the hearing, the Court did not foreclose Plaintiff's opportunity to properly respond and present its evidence opposing Defendant MH's motion. Therefore, the Court will not strike the "new evidence" included in its memorandum in opposition.

In support of the above positions, Plaintiff included as exhibits three letters, one addressed to Defendants TH and MH, one sent from Defendant TH's email, but signed by Defendant MH to the president of MLS, and a third mentioning the necessity of a group of people, including Defendants TH and MH, getting together to discuss what was meant by the agreements.

Plaintiff has alleged that Defendant MH was intimately involved with the 2006 agreement and that it was induced partially by Defendant MH's representations to enter into such agreements. Plaintiff further asserts that Defendant MH was physically present for the negotiations of this agreement. Plaintiff also states that Defendant MH was interviewed and videotaped for Plaintiff's marketing materials. The Court finds that such conduct and communication, irrelevant of the fact that she is not actually a party to the agreements, evidences "a continuing business relationship with a Utah corporation."[26]

---

[25]Transcript from December 10, 2009, hearing on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, at pg 140.

[26]*Pro Axess*, 428 F.3d at 1276.

9

As an agent, any conduct performed on behalf of the corporation, binds the corporation to personal jurisdiction, but not the agent.[27] However, as stated by Defendant MH herself, she "is not a shareholder, employee, or agent of USF."[28] Because Defendant MH was not an agent, any acts and contacts with Utah are sufficient to establish personal jurisdiction over her personally. Therefore, the Court finds Defendant MH has purposefully availed herself of the privileges of conducting business in Utah for the purposes of establishing minimum contacts. Further, the Court finds that this action arises out of those minimum contacts. Last, in addition to the findings above, because this action relates to business transacted with a resident of the state, and alleges injuries suffered by the resident, the Court finds the Utah long-arm statute is both implicated and satisfied. Therefore, the Court finds it may properly assert personal jurisdiction over Defendant MH.

## B. Defendants USF and Tom Harper

At the outset the Court notes that Defendants raise the same arguments relating to the evidence not presented at the hearing as raised by Defendant MH. For the reasons already stated by the Court, it will not strike the evidence requested.

Because Defendant TH is the president of Defendant USF, he is an agent of USF, and therefore, his actions bind Defendant USF for the purposes of personal jurisdiction.[29] Defendants Tom Harper and USF, ("Defendants") first argue that "[t]his case involves a Nevada corporation

---

[27]*Trujillo v. Williams*, 465 F.3d 1210, 1222 n.13 (10th Cir. 2006).

[28]Memorandum in Support of Motion to Dismiss, Docket No. 34, at 2.

[29]*Trujillo*, 465 F.3d at 1222 n.13.

bringing suit in the State of Utah against a Canadian corporation."[30]  Defendants' statement is inaccurate.  This suit involves a Nevada corporation whose *principal place of business is in Utah*.  Because Plaintiff has its principle place of business in Utah it is a citizen of Utah.[31]

Defendants assert that Defendant TH was lured into the forum for the purposes of being served, and that they lack sufficient minimum contacts with Utah for the Court to exercise personal jurisdiction over them.  Defendant TH states that he was invited to Utah by ForeverGreen on September 1, 2009, to speak at a conference hosted by it, and that ForeverGreen offered to pay for his plane tickets, hotel, and meals.[32]  Defendant TH arrived in Utah on October 8, 2009, the same day Plaintiff filed its Complaint. Defendant TH was served with a copy of the Complaint in his hotel room on October 10, 2009.[33]  Plaintiff counters that Defendant TH was properly served as it did not have anything to do with the organization of the convention, or ForeverGreen's invitation to the convention.  The Court finds no evidence that Plaintiff lured Defendant TH into the forum through trickery or artifice.  Therefore, because Defendant TH was physically present in Utah when he was served, the Court finds no reason to quash service of process.  Because Defendant TH was properly served in Utah, personal jurisdiction over him is proper.  However, even if service of process was improper, the Court finds Defendants have sufficient minimum contacts to support the Court's jurisdiction over them.

---

[30]Defendants' Memorandum in Support of Motion to Dismiss for Lack of Jurisdiction and to Quash Service, Docket No. 37, at 2.

[31]*Wachovia Bank v. Schmidt*, 546 U.S. 303, 305 (2006).

[32]Tom Harper Declaration, Docket No. 38, at ¶ 8.

[33]*Id*.

Defendants argue that USF has not shipped products into the state of Utah, has never maintained an office in Utah, applied for a license to do business in Utah, or maintained bank accounts in Utah. Defendants in fact, spend twenty five paragraphs describing what they do not do in Utah.[34]

Plaintiff asserts that in 2005, Defendant USF contacted ForeverGreen, a Utah limited liability company with its principal place of business in Orem, Utah, to market and sell one of Defendant USF's products. ForeverGreen was also given a license for Defendant TH's personal story regarding development of Defendant USF's product.[35] Pursuant to the contract, Defendant USF shipped its product in bulk to both ForeverGreen and another Utah LLC. ForeverGreen processed Defendant USF's product and paid Defendant USF a royalty based on the amount of finished product sold. Those royalties were subject to the exclusive license agreements between Plaintiff and Defendants.

Between 2006 and 2008, approximately 1,466 kg of USF's bulk product was shipped from Defendant USF to ForeverGreen in Utah. Additionally, Defendant TH and other USF personnel engaged in numerous contacts with Utah as a result of their relationship with ForeverGreen. Moreover, Plaintiff was specifically founded as an entity after meetings between Defendant TH and another individual for the specific purpose of licensing, marketing and

---

[34]*See* Docket No. 37 at pg 2-6.

[35]It appears from the Complaint that Defendant TH has a personal relationship with the discovery, development and story of USF's product. When Defendant fell gravely ill, he began experimenting with ways for humans to digest his product. Weeks after discovering a way it could be digested, Defendant TH began to feel less pain, and a shift in his emotional state. *See* Complaint ¶¶ 14-17.

distributing Defendant USF's products.  Plaintiff only distributes products containing Defendant

USF's ingredient.  Defendants have entered three agreements to market and distribute Defendant

USF's product.  All three agreements were negotiated in both Utah and British Columbia, via

telephone conference and other various types of correspondence.  Drafts and revisions of the

agreements were sent back and forth from Utah to British Columbia.  The agreements gave

Plaintiff the exclusive right to worldwide distribution, with an exception to rights already

invested in ForeverGreen, and established Plaintiff as a Utah entity with a Salt Lake City address

designated for all correspondence.  Ninety percent of Plaintiff's duties under the agreements were

performed in Utah.

During one of Defendant TH's several trips to Utah, he spent the day at Plaintiff's offices

and participated in a video interview to be used as part of Plaintiff's marketing materials.  Given

the fact that it was his own personal experiences that lead to the development of the product, it

can be insinuated that he spoke about his personal experiences and success story as part of this

marketing campaign.  This position is bolstered by the fact that when Defendant TH attended the

conferences sponsored by ForeverGreen, he spoke about the story behind *his* development of the

product.[36]  Plaintiff also alleges, and Defendants admit, they contributed financial support to a

research project and participated in research studies on its product at the University of Utah.

The type of activity and contractual relations with Utah and Utah entities amounts to

purposeful availment.  As alleged by Plaintiff, it was Defendant TH who originally solicited

Plaintiff to market and distribute its product.  As an agent of Defendant USF, Defendant TH's

---

[36]Plaintiff's Memorandum in Opposition, Docket No. 61, Ex. 1 at ¶ 12.

acts bind USF. The services necessary to perform the contracts, negotiated by Defendant TH, were all performed in Utah.[37] The various types of direct communication with Plaintiff in Utah evidence "a continuing business relationship with a Utah [entity]."[38] Moreover, Defendant USF shipped its product directly to Utah.

This action arises out of contacts Defendants have with the state of Utah. Therefore, the assertion of personal jurisdiction comports with the notion of fair play and substantial justice. Although, Defendant TH was primarily acting as an agent, which generally would not subject him to personal jurisdiction, the Court finds, that at times, he was acting on behalf of himself as an individual, and therefore opened himself up to personal jurisdiction in Utah. Because Utah's long arm statute is to be asserted to the fullest extent possible under the Constitution, and because asserting jurisdiction in this instance complies with the Due Process Clause, the Court's assertion of personal jurisdiction over Defendants is permissible. Based on the above, the Court finds its exercise of personal jurisdiction over Defendants TH and USF is proper.

## IV. Conclusion

It is hereby

ORDERED that Defendant Margaret Harper's Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 33) is DENIED. It is further

---

[37] *See Pro Axess*, 428 F.3d at 1276.

[38] *Id*. at 1277-78.

ORDERED that Defendants USF and Tom Harper's Motion to Dismiss for Lack of

Personal Jurisdiction and to Quash Service (Docket No. 36) is DENIED.

DATED   March 19, 2010.

BY THE COURT:

_____

TED STEWART
United States District Judge